Next case your honor is number 16-2155 Maine Council of Atlantic Salmon Federation at all versus National Marine Fisheries Service. Russell Pearce Good morning your honor, Russell Pearce here on behalf of the Appellants. Judge Canna, may I reserve three minutes of time for rebuttal? Yes, you may. I represent four environmental non-profit environmental organizations who challenge the biological opinions and in particular the 2013 biological opinion that was issued by the fisheries service as its final decision making process arising out of. Do you agree the 2000, the earlier one is now moved since it's expired? It has expired by its terms, however, and this reflects our challenge. The problem with both biological opinions is that they have no jeopardy findings and commit the licensees and the commission to a long term 40 plus year and in the case of the other dams their license expires in 2036, long term regime of attempts at constructing downstream and upstream fish passage that the best available science tells us right now is doomed to fail. I'm not sure if I got the answer. Do you agree that the earlier one which has expired by its terms that that issue is now moved but the 2013 one is still effective? That's correct, but its terms and conditions are still in effect. The licensee Are you protected from taking? Yes, the licensee is still safe harbored under the 2012 biological opinion and that's the key point because the condition for the expiration was that section 7 consultation would commence again. That has been requested. The licensee has asked for an extension for the submission of the final species protection plan which was envisioned by that original biological opinion. Is it your concern about the standard of review and don't you get the same standard of review if you're in the circuit court as you would if you're in the district court? So you've already got a parallel case pending in the D.C. circuit and isn't it true or correct that the same issues you would like to raise in the district court you can raise with the exact same standard of review in the circuit court? Why are you here? Our concern is that the focus of review at the circuit court level may be quite different. No, but aren't you saying when you say that the circuit court may not do its job? Well, the result of the circuit court's review may be to vacate the commission's order but the biological opinion and the altered legal regime that it sets up would still be in place. Well, except for the fact that the government concedes that in reviewing the ultimate FERC order the circuit court may review the merits of the bio-op which is what you're asking for in the district court now and in fact I'll go so far as to ask you the question why doesn't the government's concession to that effect make that the law at the very least the law of this case if we adopt it and in effect lose your point? It is a welcome concession. The issue is when we commence this case there was no appealable commission order yet. Okay. We're not at the commencement of the case now we're at this point the government is conceding that there may be a review of the merits of the bio-op in the court of appeals which is what you are asking for. Correct, but the issue then becomes whether there is a timely review. Well, if you win in the district court you can't make it any more timely than if you win by having it considered in the court of appeals. You're stuck no matter which way you go. You either have a timeliness issue or the timeliness issue is the same regardless of who does the review. I agree we were in a dilemma at the point of needing to raise our challenge and seek judicial review of the biological opinions and issue in this case. The dilemma was that number one the commission had not yet issued an order that would be appealable under the Federal Power Act and it was uncertain how long that would take. I think you're conflating two issues you're addressing now. Back in time when there was no FERC order but there was an extended bio-op which therefore potentially allowed a take at that time, what could you do? Separate whole question. We're not standing here today. There is a DC Circuit Court proceeding. You want us to rule that under the APA you should be able to proceed in the district court. The APA requires that there be no adequate review remedy otherwise and so you're getting questions which are basically saying why isn't the DC Circuit Court proceeding an adequate review? You have the burden of showing it's not otherwise you can't proceed under the APA. Forget about the exclusivity provisions of the FERC review. Well our concern is first we did not receive that concession until the briefing in this case. But you've got it. We're asking you questions about today. And since these biological opinions were issued, the circumstances upon which the biological opinions were rendered has changed as time has gone by. The best available information is now different than it was in 2012 and 2013. And you can raise exactly this in your challenge in the Court of Appeals, can't you? That's where we're uncertain because the Court of Appeals has said in the Tacoma case that the focus of their review is on whether FERC's reliance on the biological opinion is arbitrary and capricious as opposed to whether the no jeopardy finding in the biological opinion itself. Well then in effect you're saying we don't think the Court of Appeals will in effect allow the government to make the concession that it has made. That's correct. I mean we don't know. Why don't you go to the Court of Appeals and find out? Well we have... Right now we do not see, I mean given the government's concession, it's hard to see why your claim is not moved. And you're saying well maybe the Court of Appeals will not allow, will not honor the government's concession. And if that is the case then you have a different case from the one you've got now. Isn't that so? Well the concern though again is that the biological opinion is a separate and independent final decision making of a separate agency, the fisheries service. And the appeal of the FERC order which incorporates that decision in granting the license modification at issue here will be the subject of that circuit court petition for review. But the biological opinion itself will remain in effect. Well it will remain, no matter what the standard of review is, it's going to remain in effect unless it's vacated by some act of the Court of Appeals. And it seems to me that what your argument boils down to is we don't think the Court of Appeals will do what the government concedes it ought to do. But you're saying it may not. It may not. But that's a tough sell for a party with the burden of establishing jurisdiction. It may not. What do we do with that? I agree. I agree. But again the issue is we did not get that concession from the government until going through this whole process. But you get it. But if we say No one's saying you didn't have a right to start. Well, but if we say in our opinion that you can get the review that you thought you would only get in the district court, doesn't that end it? Yes. I mean, again, I'm uncertain. Given the City of Tacoma's, the D.C. Circuit's decision where it explains that the focus of review on a direct petition of the Commission's orders under the Federal Power Act is a different focus. Well, again, let's assume you're right on this and your May turns out to be a night a pipe dream. So you get over the APA issues we've been talking about. Then you've got the H-51B exclusive jurisdiction issue. How do you, as I understand it, the FERC license decision largely focuses on the BIOP. In other words, it adopts the BIOP as a condition of the FERC license. How does that not, and the controversy is whether that FERC license should have a different BIOP or no BIOP at all or not allow any take. How does that BIOP therefore not adhere in the controversy that is before the D.C. Circuit, thereby triggering the exclusive jurisdiction provisions of, what is it, AD 251B? Well, again, I think turning to the Dow Agri-Sciences, the Fourth Circuit discussion of the adhering concept which first came from the taxpayers' case back in 1958, which dealt with a different situation. We agree in the taxpayers' case that a state court action which was used to collaterally attack the license decision of the commission at the time would be an issue that it does adhere in the controversy. And that's when the taxpayers' case first raised this idea. But here, the controversy is over the FERC license. And as I understand it, your basis for attacking that license is you think that it rests upon an improper foundation, that the BIOP is itself infirm. The controversy involves more than just the FERC issuance of the order in this case. The controversy here is in the Fishery Service finding of no jeopardy based on the operation or the combined affiliated operation. Let me put it this way. If the BIOP is completely okay, 100% good, is there any problem with the FERC order? No. And if the BIOP is no good, isn't it your position that the FERC order, therefore, needs to be vacated by the D.C. Circuit? No. FERC can choose not to follow the BIOP. It can choose to allow down on vacations. But they can't adopt it and say it's okay. They have to make that choice, and they haven't. So when the D.C. Circuit have to vacate, it can give them that option. Correct, but... And how does the BIOP not adhere, in fact, constitute the central issue in the Circuit Court decision and, therefore, trigger 8251B? Well, again, because it has separate terms and conditions and a separate no jeopardy finding that doesn't necessarily impact dam modification. FERC may have to do other things based on a different BIOP. Thank you. Good morning. I'm Kevin McCardle on behalf of the Fisheries Service. And the appellees will be splitting their time, so I'll be reserving six minutes for Mr. Morrison, who represents Brookfield, and the non-federal appellees, and may it please the Court. Focusing on the question that was the subject of most of the discussion, since the biological opinion is an integral part of the FERC order and was adopted into the order itself, Section 313B of the FPA, the Federal Power Act, provides the exclusive avenue for judicial review without any challenge to the BIOP. Are you challenged? Do you agree that the petitioners here had a right in the District Court of Jurisdiction to hear a challenge under the APA at a time when there was no pending D.C. Circuit Court proceeding? In fact, the FERC hadn't finished its proceedings. No, Your Honor, we don't agree with that. And what's the basis of saying that they could not at that time before there was an extant D.C. Circuit Court proceeding? Let me ask you this. Did the BIOP have any operative real-world effect at the moment it was issued by NMFS? It had the operative effect that makes it a final agency action. And that operative effect is exclusively on the action agency. As the Supreme Court said in Bennett, a biological opinion has a powerful and coercive effect on the action agency and is virtually determinative of its ultimate decision. But I mean, in fact, even apart from that, didn't your client rely on it to provide some Actually, FERC. I don't represent Brookfield. I represent the National Marine Fishery Service. FERC, most definitely. But the licensees, didn't the licensees rely on the issuance of the BIOP even before FERC got to its order? That BIOP now allows a take that could have been a criminal act before the BIOP was issued. Well, in our view, although the Court need not reach this issue because we're not in that situation, in our view, the BIOP and incidental take statement are operative if and only if the action agency, which is here FERC, proceeds with the action evaluated in the BIOP, the action that is the subject of the BIOP and take statement. The whole purpose of an incidental take statement is to provide the action agency with an exemption from take. So what's your authority? I think you're answering no to my question, which I think you're saying is the BIOP had no real-world practical effect until FERC adopted it. Well, it most definitely had a practical real-world effect on FERC in essentially coercing People who might take fish. Right. At that point, no. I don't see any authority in the brief for that proposition that it had. In fact, I think in the brief, as I understand it, although it's a little confusing, a proceeding under the ESA was in fact dismissed because of the issuance of the BIOP that then insulated the licensees from activity that otherwise would have been challenged under the ESA. There was a challenge to the licensees in which the federal government was not a party, and upon issuance of the BIOP, the district court dismissed the take claim against the licensees. So the licensees and the United States District Court all thought the answer to my question is yes, it did have a real-world effect outside of FERC. Respectfully, Your Honor, no, because that issue wasn't addressed. It's not addressed in the court's decision. The question here of what happens between when a BIOP is issued but before the agency acts, is the BIOP, does the BIOP provide a take exemption for private parties in those circumstances? And that issue was not addressed. And so both as a matter of law... And the answer to that issue, I take it, in your view, is no, it does not provide authority. That's correct. In any situation, it's the agency action is what triggers all of the requirements of Section 7. If the action agency ultimately decides not to proceed with its action, it doesn't issue a permit or it doesn't issue a license for whatever reason, then the terms of the BIOP are inoperative. In those circumstances, there's an alternative procedure under ESA Section 10 where a private party can get an incidental take permit that provides a private party with an exemption from take regardless, that's not tied to any agency action. And it would be at that point and only at that point that there was a real-world effect in the absence of a FERC order? No, Your Honor, respectfully, there is always, upon issuance of the BIOP under the Court's decision in Bennett, there is an immediate coercive and determinative effect on the action agency. No, but I'm talking about effect on someone other than the action agency. Then no. The answer is no. No. Okay. And the best, what do you cite us to for that proposition, the statutory language? Right. If you look at 1536B4, it says when the fishery service concludes that the agency action and any take, quote, unquote, incidental to the agency action, unquote, will not cause jeopardy. At that point, it issues an incidental take statement. And all of the terms of the take statement are tied exclusively to the take, quote, unquote, incidental to the agency action. Now, that's not to say that private parties can't be covered because, as in this case, private parties often implement the agency action. They implement a dredging permit or, here, a dam operating license. But the ITS, the take statement only exempts the take that is caused by the agency action evaluated in the BIOP. I'm returning to the question that was addressed in the initial presentation. Since the biological opinion was adopted into the FERC order, it's an inherent part of that order. So in exercising its jurisdiction over plaintiff's petition in this case, the D.C. opinion itself, with one caveat that we noted in our brief, that assumes that there are no other procedural or jurisdictional hurdles under, for example, the Federal Power Act or Article III standing or any other issues which FERC, the primary respondent in the D.C. Circuit case, might raise. Is this a result of a beneficence by the federal agencies here in this particular case, or is this generally true? In other words, suppose you intervened, your client intervened in the D.C. Circuit court proceeding, I believe? Correct. Suppose you hadn't intervened. Could the petitioners have forced you to do so so that they could have you bound? In other cases, such as the American Rivers case that's pending in the D.C. Circuit, the petitioners have simply named the fishery service as a respondent. And there's been no objection to that. And then how about the record? How does the NMFS record get to the D.C. Circuit so that the D.C. Circuit can perform the same type of review that would otherwise be performed by the district court under the EPA? In each case that's been litigated so far, the fishery service or the other consulting agency, the Fish and Wildlife Service, has submitted the administrative record for its biological opinion. So between FERC's record for its licensing action and the administrative record for the biological opinion, as Judge Stahl pointed out at the onset, the review proceeds exactly in the same way as it does in district court. And that's just to try to wrap up before my time expires. I think that's an important point to bring up that this Court made in the Cousins case. And that's there's no tension between the APA and special statutory review procedures like the Federal Power Act. The APA provides a set of uniform rules for judicial review of agency action, such as the arbitrary and capricious standard, the rule that judicial review is limited to the record. But the APA in three different sections, 702, most prominently 703, and 704, recognizes that there are special statutory review procedures in certain circumstances that best particular courts with subject matter jurisdiction. And that's exactly the situation here. We have one of those special statutory provisions, and it applies. And therefore, the APA by its own terms doesn't apply. So the district court properly dismissed the case for lack of jurisdiction. Thank you. Good morning, Your Honors. My name is Matthew Morrison. I represent the license holders in this proceeding, the Brookfield parties. Your Honor, I would like to just say at the outstart that we are in 99 percent agreement with the government on its position. We are not in the same place with the government as to the effectiveness of the safe harbor when it comes to the issuance of a buyout. So in other words, you think it did have a real-world verification once it issued that being, even before FERC had acted, it provided you with a safe harbor for incidental take? Yes. Yes, Your Honor. We read Section 70 of the Endangered Species Act to provide that protection. As long as the terms and conditions of that biological opinion are met and those actions are undertaken, it's our position that the safe harbor is in effect. But I also agree with the government that we need not reach that issue to get to the jurisdictional matter before the court today. And I'd like, in the little time I have, to just focus on three questions that the court has raised. First, in terms of whether or not this matter is inhering in the proceedings before this court, there is tremendous overlap between the biological opinion and the FERC license. In fact, the very essence of the biological opinion is captured into the FERC license. Secondly, the same salient terms appear in both, and the biological opinion would not even exist but for the FERC licensing proceeding. So when we get to the circuit court and there is review of the FERC license, in order to determine whether or not the action agency acted in an arbitrary and capricious way, you necessarily have to look at whether or not that underlying biological opinion itself was also arbitrary and capricious or reasonable. Fair enough. But before there is a FERC order, and hence a specific review provision comes into effect under the Power Act, up until that point, why doesn't the district court have jurisdiction under the APA? Well, it goes back to Section 313, Your Honor, and what the Supreme Court said in Taxpayers of Tacoma, in that exclusive jurisdiction resides in the Court of Appeals not only for parties agreed by the order, the FERC order, but also for all matters inhering in the controversy. But that language only says once you've got a Court of Appeals proceeding and the record's been filed. That's what Congress said. Congress didn't say that there's no jurisdiction under the APA merely because that exclusive jurisdiction proceeding might someday be commenced. It only says when it's commenced, and when the record is filed in it, it becomes exclusive. So I go back to the question, how can you maintain that there's a real-world impact on your ability to take fish, your client's ability to take fish, back on day one when the BiOp was issued, and yet the petitioners couldn't do anything about it? They couldn't go into your district court and the APA? Well, there are things that could be done. First of all, Your Honor, it's important to understand what happens on the issuance of the biological opinion here. This opinion is about whether FERC would incorporate an interim species protection plan. So if you look at the very action that's being proposed here, it's to actually enhance fish protection. We're talking about additional upstream and downstream measures for fish passage. We're looking at additional studies to protect the Atlantic salmon. Okay, that may mean that if you're in the district court, maybe you're going to win the challenge. But what is the reason for saying that you can't be in the district court at all prior to the FERC order? And it seems to me that the special provision under the Power Act doesn't come into play until there is an appeal of the FERC order. And it seems to me, and I'm going to throw you a possible argument here, it seems to me that the only argument that you really have for no, with clear authority, for no district court jurisdiction prior to appeal of FERC is that if you allow district court jurisdiction, you are in fact going to, if not minimalize, at least very much reduce the intended effect of the exclusive jurisdiction provision once there is a FERC order. And are you making that argument at any point? Your Honor, yes. There are several arguments for why review is appropriate, and only in the Court of Appeals. So we did talk for a moment about Section 313 and the Supreme Court's review of that, which said it was the specific, complete, and exclusive mode of review, barring all other methods of review. Second, we have Section 704 of the Administrative Procedures Act, which says if we have, as we do here, an adequate remedy in another court, we need not go to the district court. How is it adequate on day one? Let's assume a buyout comes out that is just bad science, fatally flawed, all the procedures were violated by NMFS, it shouldn't have been issued, no doubt about that. Your proposition is the next day after it was issued, your clients could take fish allowed by that buyout, and no one could do anything about it until the FERC proceeding ended a year or two down the road, and you're insulated from any judicial review whatsoever. I think that's what you're arguing. No, Your Honor. Well, what would be the review on day one under that scenario? Under review on day one, the parties could go to the court and seek an expedited review in the Court of Appeals if it's so wished. There's no FERC proceeding. There's no FERC order yet to appeal. There does not have to be, Your Honor, excuse me, there does not have to be a FERC order in order to have that review in the Court of Appeals. What's your authority for that? All of the cases that have decided this issue from the Ninth Circuit to the D.C. Circuit, Your Honor, have said that you don't have to await the issuance of a FERC order before you have a review in the Court of Appeals. City of Tacoma, California Sport Fishermen, and a line of cases in those courts, you do not have to, and that goes to the in hearing, Your Honor. Well, if despite my brother's questions, or rather bearing in mind my brother's questions, if in fact City of Tacoma is not taken as sort of the lead case supporting you, then I take it you would be without authority for the proposition that you can go into the Court of Appeals before the FERC order. In other words, your authority is interpretive construction, but there's no statutory provision for it, I take it. There is not a specific statutory provision, that's correct, Your Honor. So everything turns on City of Tacoma, then? City of Tacoma, no, there's actually a whole line of cases, Your Honor, including the Uter case out of the Ninth Circuit and other cases, the District of Arizona. All of the other courts over the last ten years that have looked at this issue have concluded the same way. How could a district court conclude that you could go into the circuit court? Excuse me, Your Honor? A district court proceeding? Yes, all of the courts that have looked at this issue have decided that judicial review of a biological opinion under the Federal Power Act is limited to the Court of Appeals. That's correct. And, Your Honors, I'd also point you to three other quick principles before I close, and that is Section 703 of the Administrative Procedures Act makes exceptions where there's specific statutory language for judicial review. We also know that where there is a general statute, such as the Administrative Procedure Act, it generally yields to the more specific provisions of a statute like the Federal Power Act. And lastly, where you do have any kind of question between a district court and an appellate review, you do go to the appellate courts for that final review. Thank you. Thank you very much, Your Honors. At least we allowed them to go over a bit, so you have an extra minute on your time. Thank you, Your Honor. I think that the licensee's arguments here, especially in conceding the immediate and independent impact of the safe harbor, the 1536 sub 0 protection from take, that comes into play as soon as the biological opinion issues as the final decision-making process of the fishery service. That argument also suggests a point we made in our brief, that the principle that we are advocating here cuts both ways. Industry or licensees also may need to rely on the right to judicial review in the district court immediately of biological opinions that set forth terms and conditions that they may not want to live with and may challenge as arbitrary and capricious. And they should not have to wait what could be a long time for the decision of the commission, which because the biological opinion is virtually determinative, is probably going to accept that opinion. And so our concern here is that setting aside what may become the mootness issue based on the concession of the government that in present posture the D.C. Circuit may have a full and complete review of the issue, that we not set precedent that indicates to parties that they are precluded from judicial review of biological opinions in proceedings where it's a section 7 consultation with the commission. What do you say about the argument that was just made to us a moment ago by licensees council that even before FERC has done anything other than ask MMS to look at it, even before FERC has issued any order at all, you could under the F.P.A. go into the Circuit Court of Appeals to challenge the BIOP? Again, there does not appear to be any precedent for that. When we filed this action, it was in reliance on the Dow Agri-Sciences case, which is significant because in that Fourth Circuit matter, the district court review petition was filed before the action agency had issued its order. And that's why Dow is informative and persuasive in this setting. It is the same procedural context. You had a party wishing to challenge the ITS or the incidental take statement in permanent conditions, take conditions of a biological opinion before the action agency had acted on that opinion. And the Fourth Circuit said that district court review is not precluded in that context. And that's the importance of the decision from this court, is that we not have precedent that tells anyone who wishes to challenge a biological opinion in a commission proceeding, in a commission consultation, that they have to wait what could be inherently years, especially if the biological opinion has folded into it a multi-year long process. If it's that multi-year long process which is challenged as being contrary to law or arbitrary and capricious, we've compounded the problem now where parties, the fishery service may be insulated from judicial review for an extended period of time while it has altered the legal landscape, altered the legal scheme for everyone involved in setting up a regime that could be subject to challenge. So to some extent you're saying that if there isn't a preliminary review possible, enough damage can be done so that when finally review is possible, it won't make any difference. Right. And you are locked into a doomed multi-year scheme, which is reflected right now with the hydrocannabic biological opinion and its expiration. The next consultation will be based upon a biological opinion that my client's contend was fatally flawed to begin with. The current route now available to you as a result of the concessions actually gets you to the circuit court faster than the APA route would, so you get a final determination here. As matters unfolded. Yes, you just want us, I think what you're saying is please don't do any collateral damage to me about other scenarios that aren't now extant in this case. Correct, I mean, yes, yes. Thank you. Thank you. Your Honor, excuse me, I'm wondering if Matthew Marston and I could make one clarifying point. I think we're all set. If it's a precedent that hasn't been drawn to our attention, you could file a 28-J letter, but otherwise we'll look at the record.